IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KAREN HOSTEEN,

       Plaintiff,

v.

CORLEY DODGE, LLC; WESTLAKE FINANCIAL;
and SENTRY SELECT INSURANCE,

       Defendants.

## COMPLAINT FOR DAMAGES

1. Defendant Corley Dodge sold Plaintiff Karen Hosteen a 2007 Chevrolet Silversado Truck with an incorrect odometer disclosure.

2. The dealer's actions violate the federal Motor Vehicle Information and Cost Savings Act and the New Mexico Unfair Practices Act, and the dealer committed common law fraud.

### Jurisdiction

3. This Court has jurisdiction under the federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. §32710, and 28 U.S.C. §§ 1331 and 1337.

4. The Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

### Parties

5. Plaintiff Karen Hosteen resides in Churchrock, New Mexico. She is a "transferee" as defined in 49 C.F.R. §580.3.

6. Defendant Corley Dodge, LLC ("Corley") is a New Mexico company and licensed auto dealer, conducting a new and used auto dealership in Albuquerque, New Mexico. Corley

is a "dealer," as defined by 49 U.S.C. §32702(2), and a "transferor," as defined by 49 C.F.R. §580.3.

7. Defendant Westlake Financial Services ("Westlake") is a foreign company which finances motor vehicle sales. It specializes in buying subprime loans from dealers. Westlake purchased from Corley the Retail Installment Sales Contract which Ms. Hosteen signed. Several months later it re-assigned the contract to Corley's.

8. Defendant Sentry Select Insurance is a foreign corporation that provides the surety bond necessary to license Corley as an auto dealer pursuant to NMSA 1978 § 66-4-7. As the surety, it is liable all actual damages due to Corley's fraud and all attorney fees and costs accrued by Ms. Hosteen in pursuing her fraud claim, up to $50,000.

## Facts

9. In May, 2010 Ms. Hosteen bought a 2007 Chevrolet Silverado truck from Corley Dodge in Gallup for $13,395.67 plus tax, license fees and dealer transfer service charge. Ms. Hosteen paid $2,500 as a downpayment on that date and paid an additional $500 shortly thereafter.

10. The "retail purchase agreement" and the "dealer's bill of sale" disclosed the odometer mileage as 64,060.

11. Ms. Hosteen relied on that mileage disclosure in forming her decision to buy the car.

12. Ms. Hosteen later noticed that the "odometer disclosure statement" said the odometer mileage was 64,060 and that the amount of the mileage is "in excess of its mechanical limits."

13. Upon information and belief, when the dealer submitted information and documents to Westlake, it showed the odometer mileage at the time of sale exceeded 94,000.

14. Shortly after Ms. Hosteen purchased the truck she was parked in Gallup when a woman approached her and told Ms. Hosteen that she had formerly owned the truck and that it had significant mechanical problems.

15. On about June 24, 2010 the truck experienced engine problems. Ms. Hosteen pulled off the road and had the truck towed back to the dealer. The Corley service department told her the engine was "blown."

16. Ms. Hosteen retrieved the truck from Corley July 31. She has not driven the truck since then.

17. Corley never furnished Ms. Hosteen the license plates or registration to the truck, despite charging her $199 for a dealer transfer service fee. Upon information and belief, Corley never conveyed the titled to Ms. Hosteen, thus breaching its contract and excusing Ms. Hosteen from the obligation to make payments.

18. Westlake forced Corley to repurchase the contract, due to shenanigans by the dealer in the financing process.

19. Sureties of auto dealer consumer protection bonds are liable for any damages awarded for fraud by their principal dealers. *See*, NMSA 1978 § 66-4-7(B) ("bond shall be payable . . . of any loss, damage and expense sustained by the purchaser or his vendees, or both, by reason of . . . any fraudulent misrepresentations").

20. As a result of Corley's actions and omissions, Ms. Hosteen suffered actual damages, including paying an amount in excess of the fair market value of the truck at the time of sale.

21. An award of punitive damages is appropriate to deter future similar conduct by Corley and other auto dealers.

**First Claim for Relief:  Federal Motor Vehicle Information and Cost Savings Act**

22. Defendant Corley violated the federal Motor Vehicle Information and Cost Savings Act and its regulations, by giving false statements to a transferee about the truck's odometer mileage, in connection with the sale to Ms. Hosteen.

23. Corley violated the federal Motor Vehicle Information and Cost Savings Act with intent to defraud.

24. As a result of these violations of the federal Motor Vehicle Information and Cost Savings Act, Defendant is liable to Ms. Hosteen in an amount equal to three times actual damages or $1,500.00, whichever is greater, plus attorney's fees and costs.

**Second Claim for Relief:  New Mexico Unfair Practices Act**

25. The foregoing transactions occurred in the regular course of Corley's trade or commerce, and its actions are subject to the New Mexico Unfair Practices Act.

26. The foregoing actions of Corley constitute unfair or deceptive trade practices, as well as unconscionable trade practices, within the meaning of the New Mexico Unfair Practices Act, §57-12-2C N.M.S.A. 1978.

27. Corley knowingly and willfully engaged in these unlawful trade practices.

28. As a result of the foregoing acts and omissions, Ms. Hosteen suffered actual damages and injury, including, but not limited to, paying a price in excess of the value of the vehicle.

29. Ms. Hosteen is entitled to recover actual or statutory damages, actual or statutory damages trebled, plus costs and reasonable attorney's fees.

**Third Claim for Relief:  Fraud or Misrepresentation**

30. Corley induced Ms. Hosteen to purchase the car by misrepresentation of material facts and omission of material facts.

31. Corley knew such representations to be false, or it made those representations recklessly, or Corley had no reasonable grounds for believing those representations were true. Corley also knew that its omissions were material and important.

32. Corley intended to deceive Ms. Hosteen and intended that she would rely upon its representations, which she did, to her detriment, suffering damages.

33. Ms. Hosteen is entitled to monetary damages in an amount to be proven at trial, and punitive damages should also be awarded against defendant.

### Fourth Claim for Relief: Breach of Contract / Conversion

34. Corley failed to convey title to the vehicle, or to return Ms. Hosteen's money, despite notice and demand.

35. Corley has kept Ms. Hosteen's money, which exceeds $3,000, without conveying title to the vehicle or registering it.

36. Corley has breached the contract and converted Ms. Hosteen's funds.

### Request for Relief

Ms. Hosteen requests that the Court award:

A. Statutory or treble actual damages for violation of the federal Motor Vehicle Information and Cost Savings Act;

B. Actual and punitive damages for fraud and conversion;

C. Actual or statutory damages, trebled, for violations of the UPA;

D. Return of all funds paid under the contract and cancellation of the contract;

E. Reasonable attorney fees and costs;

F. Such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Richard N. Feferman
Richard N. Feferman
Feferman & Warren
300 Central Avenue SW, Suite 2000 West
Albuquerque, New Mexico 87102
(505) 243-7773